UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**19 CV 5455**

Carlo Giurdanella

_____
Write the full name of each plaintiff.

_____CV_____
(Include case number if one has been assigned)

-against-

New York City Police Dept.
City of New York
State of New York

_____
Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

**COMPLAINT**

Do you want a jury trial?
☐ Yes   ☐ No

*[stamp: RECEIVED SDNY PRO SE OFFICE 2019 JUN 11 PM 3:40]*

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 1/9/17

## I. BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☒ **Federal Question**

☐ **Diversity of Citizenship**

### A. If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

*Rights afforded by Fifth and Fourteenth amendment to U.S. Constitution of procedural and substantive due process. Fairness under which law is implemented.*

### B. If you checked Diversity of Citizenship

#### 1. Citizenship of the parties

Of what State is each party a citizen?

The plaintiff, _____ , is a citizen of the State of
(Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, __NY Police Dept, City+State NY__, is a citizen of the State of
(Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____

If the defendant is a corporation:

The defendant, __City + State of New York__, is incorporated under the laws of the State of __New York__

and has its principal place of business in the State of __New York__

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

__Carlo__           __R__              __Giurdanella__
First Name          Middle Initial     Last Name

__9095 Mesa Woods Ave.__
Street Address

__San Diego__                    __Ca__           __92126__
County, City                     State            Zip Code

__(917) 560-4068__
Telephone Number                 Email Address (if available)

Page 3

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1: Police Dept of City of New York
First Name / Last Name

Current Job Title (or other identifying information)

1 Police Plaza Path
Current Work Address (or other address where defendant may be served)

New York, NY 10007
County, City / State / Zip Code

Defendant 2: City of New York
First Name / Last Name

Attn: Corporation Counsel
Current Job Title (or other identifying information)

100 Church Street 5th Fl.
Current Work Address (or other address where defendant may be served)

New York, NY 10007
County, City / State / Zip Code

Defendant 3: State of New York
First Name / Last Name

Court of Claims of the State of New York
Current Job Title (or other identifying information)

The Gov. Nelson Rockefeller State Plaza, Box 7344
Current Work Address (or other address where defendant may be served)

Capital Station, Albany NY 12224
County, City / State / Zip Code

Defendant 4:

First Name          Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City          State          Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: 321 E. 5th St. NYC, NY &

Date(s) of occurrence:

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

On June 27, 2012 Police officer Michael Sarro shield #279 279 of the New York City Police Dept. filed a false police report claiming a statement, "I told him to move his cab and he wouldn't move." This statement was in fact never made and went uncorroborated by all parties in the case of State of New York vs. Carlo Giurdanella Ind.# 4098/12 This falsified statement filed by P.O. Sarro then used fraudulently as probable cause in obtaining a wrongful/fraudulent indictment in violation of a defendant's right to fairness in all legal matters afforded by the Fifth and Fourteenth Amendments to U.S. Constitution of procedural and substantive due process. Trial testimony delivered by P.O. Michael

Sarro confired the falsified police report filed. Police Dept of City of New York also submitted at trial a shrouded photograph of defendant Carlo Giurdanella in order to obstruct the fact that Mr. Giurdanella was the victim of the assault perpetrated by Ahmed Kamel on the evening of June 27, 2012 in front of 406 E 11th St NYC, NY 10009. The State of New York failed to bring forward exculpatory material (911 Call) introduced but never produced at trial that would have exonerated defendant.

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

As a result of the wrongful conviction in this case I have suffered an extreme psychological impact questioning my safety at any and all turns. I gave up a professional license and I engaged in 20 weeks of residential treatment at the Esalen Institute.

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

I would like to see that my conviction is vacated. I would like that the State of New York restore my Real Estate Salesperson's license - not requiring any continuing education for a period of 6 years.
I would like to see those within the New York City Police Dept + the DA's office arrested + convicted of their crimes.

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| 6/11/19 | _(signature)_ |
| Dated | Plaintiff's Signature |
| Carlo | R       Giurdanella |
| First Name | Middle Initial       Last Name |
| 9095 Mesa Woods Ave | |
| Street Address | |
| San Diego | Ca       92126 |
| County, City | State       Zip Code |
| (917) 560-4068 | |
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☐ Yes   ☐ No

> If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.



**United States District Court
Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;
2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;
2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;
3. This service does *not* allow you to electronically file your documents;
4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

500 PEARL STREET | NEW YORK, NY 10007
300 QUARROPAS STREET | WHITE PLAINS, NY 10601

PRO SE INTAKE UNIT: 212-805-0175

rev. 2/9/15

# APS DA DATASHEET

|  | Defendant #1<br>Carlo Giurdanella | Defendant #2 |
|---|---|---|
| Bail Rec: |  | Bail Rec: |
| Reasons:<br>- Facts of case - where D punched CW, then repeatedly kicked CW after CW fell to the ground | | Reasons: |
| Bail Req:<br>$750 | Bail Set:<br>ROR | Bail Req: | Bail Set: |

## STRANGER ASSAULT: D PUNCHES CW IN FACE, ARM, LEG, AND TORSO

Relationship: strangers
Incident: D has a yoga studio and was upset about cab drivers parking in front of business. D had complained to pct previously. D told CW to move cab and CW refused and D began punching CW in face and arm. CW fell to ground and D began kicking him in legs and torso. Bleeding, redness, swelling, substantial pain to face. Substantial pain to CW's left arm (possibly broken). Substantial pain to torso and left leg (leg possibly broken). CW screaming and crying ss: MY ARM! No injuries to D.
Treatment: Beth Israel
Photos: none
911: unknown 911 caller
D: I TOLD HIM TO MOVE THE CAB AND HE WOULDN'T MOVE.

Statements Δ1:
On 6/27/12 aa 20:55 hrs ifo 402 E. 11th St., D ss to PO Sarro: I TOLD HIM TO MOVE THE CAB AND HE WOULDN'T MOVE.

Statements Δ2:

ID Δ1:
On 6/27/12 aa 20:53 hrs ifo 402 E. 11th St., 4 EW's ID'd D in a NPA PO.

ID Δ2:

| Date: | Part: | Special Instructions | Notice Checklist | D E F 1 | D E F 2 |
|---|---|---|---|---|---|
| 8-7 | DAT | | | | |
| ADA:<br>Rahn | | Arraignment Notes: | 710.30(1A) | ✓ | |
| | | | 710.30(1B) | ✓ | |
| Judge:<br>Titsch | | | 190.50(5A) | | |
| | | | Cross G.J | | |
| Court Reporter:<br>Morrison | | | OTP | | |
| | | | 170.20 | | |
| Adj. Date:<br>9/20 | Adj Part: | C | Request TOP | | |
| | | | F & S.Supp.Dep. | | |
| Reasons: | | | 450.10 48.Hour | | |
| | | | 450.10 15 Day | | |
| | | | Surety ____ | | |
| | | NO O/R | F & S Field Test | | |
| A/C #1:<br>L. Ponchak (LAS) | | A/C #2: | | | |

1357248

Page 1 of 2
Created on: 07/25/12 at 9:37 AM
ACT 5 Version 4.3.5

Sarro - Cross - Mr. Hammer

1        THE WITNESS: That's correct.

2  Q  A misdemeanor, and that's a lesser crime, right?

3  A  As opposed to?

4  Q  A felony.

5  A  That's correct.

6  Q  Did you file a document in the court pursuant to this
7  arrest?

8        THE COURT: You mean a deposition?

9  Q  (Cont'g) A sworn statement?

10       THE COURT: Did you swear to a statement?

11       MR. PIEFSCH: Objection.

12       THE COURT: Sir, did you show it?

13       MR. HAMMER: Let him see it.

14       THE COURT: Did you swear to that statement?

15       THE WITNESS: Yes.

16  Q  Do you remember, do you want to read it?

17  A  It is a supporting deposition.

18  Q  You want to read the contents of it?

19  A  Sure.

20       (The witness was shown the exhibit.)

21  A  (Cont'g) Okay.

22       THE COURT: He read it.

23       What's your question?

24  Q  Where did you get your information in regard to the
25  contents of this statement you made under oath?

Ellen S. Bruno - S.C.R.

Sarro - Cross - Mr. Hammer

1    A    P.O. Rozanski.

2    Q    From Officer Rozanski, that's correct?

3    A    That's correct.

4    Q    Was Rozanski on the scene during the course of the incident?

6    A    Yes.

7    Q    He was?

8    A    Yes.

9    Q    It says here --

THE COURT: Okay, you cannot read it to him.

If you have a question about it, if you need --

MR. HAMMER: I was going to hand it up to him and put a question to him.

THE COURT: If you're using it as impeachment, you can, but you cannot read from that. It is not in evidence.

MR. HAMMER: I didn't.

THE COURT: I'm telling you.

MR. HAMMER: I know the rule.

THE COURT: Good. I'm glad you do.

(The witness was shown the exhibit.)

21    Q    (Cont'g) And the contents of that last paragraph, have you looked at the last paragraph?

23    A    Yes.

24    Q    Have you read it?

25    A    I have.

Ellen S. Bruno - S.C.R.

Sarro - Cross - Mr. Hammer

1   Q   And do you remember having signed it after reading it?

2   A   Yes.

3   Q   And it's your testimony today that whatever is in
4   there, you got from Officer Rozanski and it was not your -- any
5   other source or knowledge?

6   A   What do you mean?

7   Q   That's who told you what was written in that paragraph
8   and you signed it?

9   A   Yes.

10  Q   Thank you very much.

11      Was Mr. Giurdanella detained at the 9th Precinct as a result
12  of the arrest that you made of him and after you put him in the
13  cage, as you called it?

14  A   He was held there until he was released with a desk
15  appearance ticket.

16  Q   He was released from the precinct?

17  A   That's correct.

18  Q   Let go?

19  A   A few hours later, yes.

20  Q   And what do you mean a desk appearance ticket, what
21  does that mean?

22  A   You just have to come back and appear in court at a
23  later date, instead of going down to central booking and seeing
24  a judge.

25  Q   Remaining in jail and being hauled about, until you go

Ellen S. Bruno - S.C.R.

Kamel - Cross - Mr. Hammer

1  Q    You see how tall he is.
2  A    Yes.
3  Q    Can you make a judgment about his weight?
4       THE COURT: I don't think he needs to do that.
5  A    It's hard over.
6       THE COURT: (Cont'g) No, no.
7  A    (Cont'g) Over the internet, it is very hard.
8  Q    Well, the point I want to make is that he is
9  substantially smaller than you, correct?
10 A    Yes.
11 Q    And when you went to your cab, he was standing there
12 and he spoke to you, correct, he said something to you?
13 A    Yes, the first thing he said, you cannot get into your
14 car, you cannot take the car and leave.
15 Q    And did he tell you why you cannot take your car to
16 leave?
17 A    He said because you park is -- your car is in the front
18 of the driveway.
19 Q    Is it a violation of the vehicle and traffic law to
20 park in the driveway of different properties, Mr. Kamel?
21 A    I think so, yes.
22 Q    Have you gotten a ticket for that before?
23 A    I got a ticket to put my car in the wrong spot, but
24 never in front of a property, or in front of a garage.
25 Q    Nobody mentioned a garage.

Ellen S. Bruno - S.C.R.

Uddin - Direct - People

    A    The driver, I saw that the driver was trying to open the car with the key.

    THE COURT: And what happened?

    THE WITNESS: And the defendant blocked him, stopped him from trying to open his car.

    THE COURT: How did he block him?

    THE WITNESS: He pushed him away.

    Q    Was the -- what happened next? Just tell the whole story, please?

    A    Then he came around to the other side, on the right side of the passenger seat.

    Q    Who came?

    A    The driver.

    Q    And what happened then?

    A    And the defendant, that gentleman followed him.

    Q    Indicating the defendant.

    A    He was shouting at him and was warning him that you cannot remove your car from here.

    THE COURT: Did he say anything else?

    THE WITNESS: And he was scolding him continuously.

    THE COURT: In what way? What was he saying?

    THE WITNESS: The very word that I mentioned.

    THE COURT: Say it again?

    THE WITNESS: Mother fucker, you Moslems, you

Ellen S. Bruno - S.C.R.

1  door.  You will hear from him he did not punch Mr.
2  Giurdanella, he did not attack Mr. Giurdanella, Mr.
3  Giurdanella however attacked Mr. Kamel, he knocked him down
4  and then while Mr. Kamel was laying on the ground knocked
5  out or dazed from the first punches, the defendant stomped
6  and kicked and stomped on Mr. Kamel multiple times.
7          Mr. Kamel was laying there defenseless being
8  kicked and stomped by someone.  The defendant chose to kick
9  him, he chose to stomp his body with his shod foot as he was
10 laying on the ground on the pavement of the street.
11         Mr. Uddin with other people had exited the mosque,
12 observed this.  In fact, numerous people observed this and
13 numerous people called 911, including the defendant.  And
14 you will hear the defendant's call and you will draw the
15 conclusions from that evidence when it comes in.
16         Police arrived along with an ambulance.  And you
17 will hear from the arresting officer, Police Officer Michael
18 Sarro from the 9th Precinct which is the precinct that is in
19 charge of that area, that works in that area, you will hear
20 from him.  You will hear from other police that were there
21 that day.
22         And when Police Officer Sarro arrived at the
23 location just a few minutes after this occurred around 9:00,
24 the defendant was standing not an injury on him while Mr.
25 Kamel was laying on the ground screaming in pain and EMS

Sarro - Direct - Mr. Pfetsch

1      THE COURT: Show it to counsel.

2      MR. PFETSCH: For identification.

3      (Shown to defense counsel.)

4      THE COURT: Okay.

5      Any problem with that?

6      MR. HAMMER: No.

7      THE COURT: In evidence.

8      Is this the picture that was taken of him?

9      THE WITNESS: Yes.

10     THE COURT: Do you know who took it?

11     THE WITNESS: I did.

12     THE COURT: You did?

13     THE WITNESS: Yes.

14     THE COURT: Is that how he looked?

15     THE WITNESS: Yes.

16   Q   Does that fairly and accurately depict the defendant as
17   he appeared that day, at the 9th Precinct, at about ten, 10:15
18   p.m.?

19   A   Yes.

20   Q   Would you show the jury.

21     THE COURT: Hold it up.

22     If you need it in the jury room, you can take it.

23     Anything else?

24   Q   (Cont'g) That's not a great photograph, correct?

25   A   No.

Ellen S. Bruno - S.C.R.